Mascow against the Board of Education comes next. Mr. Yochich. May it please the court. My name is Steve Yochich and I represent the plaintiff appellants in this case. Carol Mascow was a special education teacher in the Franklin Mascow case. In 2015, she was evaluated seven times by three different principles. She received an excellent evaluation each time. The evaluations covered 11 different categories of conduct as a teacher. In 2010, she assumed a leadership role in her union. In 2012, the defendants, the individuals, her principal Heidi LaFleur and David Katzen came to the district as principal and superintendent. In 2014 and 2015, Ms. Mascow butted heads with her principal and with the superintendent over scheduling issues. And in that time period and through the end of her employment, her evaluations fell from excellent then to proficient and then to unsatisfactory. Now what does the butted heads mean? What did what happened when they butted heads as you put it? I'm sorry, your honor. You said to say butted heads. Yes. What's that mean? What it means is that with the principal LaFleur, the principal wanted to schedule extra time on back to school night for the teachers to be there. And Mascow went to the principal and said, that's not required under our contract. Can we do something differently? The principal said, I really want to do it. Mascow said, well, if you really want to do it the way you want to do it, it's not, it's not required under the contract. No, she was some kind of a union official. She was the co-president of the Council of Teachers in Franklin Park. In the next year, there was a proposal to bring a speaker that would speak for an extra couple hours after school. And again, Ms. Mascow and her co-president went to the superintendent this time and said, we don't think that's appropriate. We have some ideas how you could do it differently. The superintendent opposed those ideas. Uh, the meeting ended very poorly with the superintendent angry. And, uh, eventually the superintendent, uh, canceled that part of the presentation. Was it otherwise going to be mandatory? Is that the problem? Yes. Both of them were meetings where people had to come and stay after school much longer than normal. And, uh, the concern of the teachers union was that, uh, uh, people structured their lives around the school day. And many of them had daycare or educational commitments after school. And the district was not willing to make attendance voluntary. It made attendance mandatory. And so there were disputes over these two issues. Um, there were disputes that occurred because of Ms. Mascow's role as the co-president of the union. Now, when her rating declined to unsatisfactory, she was laid off. And because she had an unsatisfactory rating, uh, the layoff was out with, was without any recall rights under the school code. And so Ms. Mascow's initial argument is that the district violated due process rights of Ms. Mascow when it refused her request to re-examine the rating in her evaluation. She received the evaluation. Did she have an opportunity to contest that rating when it was given? No. The rating was given on February 22nd, maybe February 21st. The two or three days after she received the evaluation, she went to the superintendent. She said, can we talk about my rating? He said, no. And, um, okay. I, I will be asking Mr. Pokorny the same question because it seems to me that that's what this case turns on whether that rating could be contested. If it could be contested before the layoff, I don't understand what issue there would be at the time of the layoff for a hearing. If it couldn't be contested at the time of the rating, then I can see what a hearing would be about at the time of the layoff. Right. And, and, and the sequence of events in this case, your honor, is that she received the unsatisfactory evaluation. She went to the superintendent. She asked if the, um, if she could, um, discuss the ratings in the evaluation. She was told no and the layoff proceeded. There was also evidence in the record that in, uh, her past evaluation, uh, she had been given a rating by the principal with respect to instruction. She contested that rating. The principal changed the rating, didn't do it on something else that she contested. And there was evidence that other teachers had in the past had been allowed to raise their hands with respect to their ratings and have their ratings changed. In this case, you know, the difference between an unsatisfactory rating and a needs improvement rating was one point. If she'd have gotten one point extra in the domain of instruction on the grid that they use, she would have received a needs improvement. And that's important in this case because if you are in the grouping for layoff where you have a needs improvement, then you, um, have a recall rate. Now that's part of the rules, I guess, then. So it depends on what kind of a rating you get. But if it, what was the one that she got ultimately unsatisfactory? She ultimately received an unsatisfactory. And that's not a, whatever reason, that's not appealable. That's, well, I mean, that's the sort of the essence of the dispute in this case, Judge Mannion, because it's our feeling and our position that because the unsatisfactory rating terminated her tenure rights based upon her performance, that she was entitled to some sort of due process before she could be laid off. Did she do something about the no improvement or needs improvement? A needs improvement doesn't terminate your tenure the same way as an unsatisfactory rate does. And if she had gotten the needs improvement, what happened ultimately was that another special education teacher left the district and she would have been eligible for recall if she had received the needs improvement. The rating is a, it's a grid. When you, you answered my question about whether she was entitled to a hearing about her unsatisfactory rating by saying, well, the head of the school district said no. Presumably this is written down someplace. It's, it might be in the collective bargaining agreement. It might be in some statute. Is it written down someplace? That she's not entitled to? Yes. It's not an issue that's covered in the collective bargaining agreement. Illinois school law vests, um, school boards with discretion with respect to ratings. All right. And principals with discretion with respect to rating, but, but it's not written down any place. What happens when you're rated unsatisfactory and you're slated for layoff? Hmm. Well, as I, as I said, I'll be asking Mr. McCorney his view about this. Right. I mean, and, and, and one way to look at it is if you think back to the Loudermill case, for example, the argument doesn't tell us what rights teachers in Illinois have to protest ratings. I, I, I, you're, you're absolutely correct, your honor. But in the Loudermill case, it wasn't written down a pre deprivation procedure and the court held, well, you have to have one. And so the fact that it's not written down is a separate issue from whether you have to have one and that, and then it is our position that because this was a rating that deprived Ms. Maskell of tenure and because it was a rating based on specific job performance. Rating doesn't do that. It was the reduction in force coupled with the rating that did that. We do need to be precise about what's doing what. I, you are correct. It is, it is both factors acting together. The, but the rating is the thing that cuts off the recall right because you have a recall right if you're rated needs improvement and you don't have a recall right if you receive an unsatisfactory. And as I was explaining, the, the margin in this case between unsatisfactory and needs improvement was very, very narrow. And as I have also, the record also indicates that in the past when people had sought to change their ratings, the school district had at least listened to people coming to change the rating and that did not happen in this case. Our other argument in addition to the due process argument, well, let me, let me spend a couple more minutes on the due process argument because the district court said this is a layoff case and because it's a layoff case, you don't have due process, you have no entitlement to due process for layoffs under the Illinois school code. Is layoff dependent on some kind of population of need as opposed to with the performance? In, so it was both your honor because in this case, the number of students was declining and, and the district determined we need one less special education teacher. However, between the time of the dismissal and the time of the next school year, two special education teachers left the district. So there were vacancies that Ms. Mascow could have filled given the population that existed in the district of students coming in for the next year. So instead of being laid off, she thinks she should have replaced somebody. She thinks that when people left the district subsequent to her layoff that she would have been eligible for recall and, and that is a right that she would have under the school code if she was given a needs improvement as opposed to an unsatisfactory. And layoff was because of unsatisfactory. The, the, the, the layoff was because of unsatisfactory, the loss of tenure and the loss of the right to recall was because she received unsatisfactory instead of needs improvement. Had she received only a needs improvement, she would have been recalled under the school code and she would like to be able to contest the accuracy of the evaluation. And, and we think that the cases that involve large layoffs don't really apply here because those are layoffs where your, your relative ranking with respect to, you know, five or 600 other people doesn't really change the results you're going to get. That's if they close the school or something. I'm sorry. That's if they close the school for example. Yeah, if they, if they, if they close the school, if they lay off a thousand people, if they close the school district, those are the types of layoffs that you can't contest under the school code. This was a layoff of one person and it involved performance. And we think under the Lalvani case, which we discussed in our brief, that a layoff that is based upon job performance implicates the same property interest as a, as a dismissive clause under the teacher tenure statute. And because it implicates the same property interest, it is entitled to the same sort of due process protection. We also allege in the lawsuit that the district violated Ms. Mascot's first amendment rights. You're in your rebuttal time, you know. Well, then I'll reserve the rest of my rebuttal time. Thank you, Your Honor. Thank you, Mr. Yokich. Mr. Picorni. Thank you. May it please the court, uh, to answer, uh, Your Honor's question as to whether the plaintiff, Ms. Mascot, had an opportunity to contest, uh, her unsatisfactory rating. What the record shows is that with respect to her 2015 evaluation, Ms. Mascot did, in fact, raise objections to the rating that she received in that year. Uh, she, uh, was allowed to present evidence to the principal, Ms. Lafleur, uh, to, uh, contest that rating and the principal adjusted that rating based on the evidence. Did she have a right to protest the unsatisfactory rating? That is, and by right, I mean notice and an opportunity for a hearing. The Illinois School Code does not specify that she has that right, uh, and... Does some document, whether the collective bargaining agreement or regulations issued by the school board, give her that right? There is no such document in the record, Your Honor. Regulations are not in records. Is there any regulation that gives her that right? There would be no regulation. So, the relevant authority would be the school code provisions setting out the detailed procedures by which evaluations occur, uh, and those procedures, uh, do include, uh, what Ms. Mascot received, which is a detailed report on her evaluation, an opportunity to meet with the evaluator, which, in fact, occurred, uh, and an opportunity to, uh, present, uh, Ms. Mascot's evaluation as what occurred in 2015 demonstrates. When Ms. Mascot presented, uh, that information in the course of the evaluation procedures under the school code, to which she's entitled, and to which there's no dispute, uh, she received in 2017, um, Ms. Mascot's evaluation was adjusted at that time. What counsel has indicated happened in 2017 is that Ms. Mascot went not to her and asked Dr. Katzen to override the evaluation that Ms. Mascot had received from her evaluator, Principal LaFleur. Dr. Katzen said he would not do that. And there was no right. Was there, did she skip that one person in between? Right. She did not direct the issues with respect to her evaluation to Principal LaFleur. And to be clear, under Illinois law, as it was to contest, uh, the evaluation. What the right is, uh, so plaintiff's burden is to establish a protectable interest under the 14th Amendment, a property right that is subject to protection. That property right is conferred by state law. In 2011, the Illinois General Assembly amended the school code to provide for a much more detailed and robust evaluation process for teachers. It set forth the requirements for the training of evaluators. It set forth the detailed process that schools are required to follow. It required schools, uh, to bargain with their collective bargaining representatives regarding this process. When was that law passed? That, uh, amendment took effect in 20, uh, the amendment was in 2011, Your Honor. So this is Senate Bill 7 from 2011. So that's before the issues here. That was before the provisions in effect at the time of plaintiff's layoffs. So what Senate Bill 7, uh, also changed with respect to the rights that, uh, the property rights that plaintiffs identify, uh, is, uh, it changed from a system in which tenured teachers could only be terminated for cause, uh, or in seniority order based on a layoff, to a system in which, uh, the, uh, terminations based on a layoff are based on a teacher's performance evaluations conducted in a- The problem, which is why I've been asking about what right she had to protest the rating, is that she had tenure as a teacher. And the fact that Illinois provides that a tenured teacher gets no hearing at all in certain circumstances is, as a matter of constitutional law, irrelevant. That's the holding of Loudermill. You can't, the question is whether there are substantive criteria that determine what the right is, whether there's a legitimate claim of entitlement. That rule was established in Roth against Board of Regents, the very first of the teacher cases. And the Supreme Court's held repeatedly that the fact that the state says, and we're not giving you a hearing to determine whether that's true, is irrelevant. The difficulty in this case is that the district court thought otherwise. The district court said, if state law says you don't get a hearing, then as a matter of federal law, you don't get a hearing. And, well, I think the phrase is, that's in the teeth of decisions of the Supreme Court. So the question then becomes, was there an opportunity for a hearing at a different phase? That's why I'm trying to figure out whether she had an opportunity to contest the rating. And it doesn't sound like it, unless you're saying that the ability to talk to your principal is all the Constitution requires. Well, Your Honor, if the court were to go into the second step of the constitutional analysis, which is, is the process adequate, we would take the position that the process provided in the evaluation procedure through the school code does afford adequate due process for the purpose of providing those evaluations. But I would suggest, Your Honor, that there is an antecedent step that needs to be looked at here. When the General Assembly amended the school code to provide for these new, robust evaluation procedures, and it also amended the recall provisions in the school code to make a teacher's evaluation, or a the order of recall, or the order of layoff and recall rights contingent upon their evaluation. The school code, the legislature eliminated the teacher's property rights to automatic consideration of the seniority in the order of recall, or in the order of layoff, and the right to recall. Justice Rehnquist once made that argument, but he lost six to three. He said, what it means is you have to take the bitter with the sweet. And six justices disagreed with that view. I don't think we're going to go back there. It might be right as a constitutional matter, but it doesn't have the blessing of a majority of the Supreme Court. Well, I'm not sure which case Your Honor is referring to, but I think the issue is that what the General Assembly did in adopting the performance-based reforms in Senate Bill 7 was to take the position that all of the rights that the plaintiffs are arguing for in this case are contingent on the evaluation. There is no property right to a particular evaluation under the school code. That is, under the school code now, a discretionary decision vested in the evaluators. So plaintiffs certainly have a property right to the evaluation procedures that are provided in the school code. And once that evaluation is made, the plaintiff would have a property right to the consequences that flow from receiving the excellent, proficient, needs improvement, or unsatisfactory evaluation. But there is no property right to that earned evaluation rating. What the school code now says is that issue has to be looked at by the evaluators in accordance with the school code, either annually or on a biennial basis for tenured teachers. And it's that evaluation that determines the ongoing employment rights going forward. So the school code, the legislature exercised its authority to change the scope of the property right that existed prior to Senate Bill 7. Are these evaluations always reviewed? Is that just part of the routine every year? Everybody's? Or is... So in the case of tenured teachers, and Ms. Maskell would be an example of that, it's an every other year evaluation. That's an annual or biannual, whatever they call it, event? Yes, that occurs every other year. So she received an evaluation in 2015 and then the unsatisfactory evaluation in 2017. So that was... Was that a jump over needs improvement, I guess? Correct, yes. And I guess that one doesn't... She did encounter someone who just said no. I don't know whether that's a hearing or not. Right. I mean, the evaluation process and the evaluation instrument that's included in the record provides a detailed assessment. It includes an observation of Ms. Maskell. It includes opportunities for Ms. Maskell to contribute her own self-evaluation in the process. So she's an active participant throughout this procedure that went forward according to the school code and according to whatever the agreements were with the union. There's no allegation in this case that the district violated the evaluation procedures in the school code, that the district violated any evaluation procedures that had been agreed upon between the union and the district. Well, when she got... Was it unsatisfactory? Is that the word? That's correct, Your Honor. Okay. When she got that, because it's when she got a layoff that caused the problem. But when she got the unsatisfactory rating, did she have a right to go in and challenge that? There's not a formal hearing process. So the answer to that, if when you say a right to go in and challenge that... A right or ability or something? Right. So what she receives is a meeting with the principal, her union representative is present, and she is permitted to make comments on the evaluation. The issue here is that what she says she did is she went to the superintendent and asked the superintendent to overturn that evaluation. He declined to do that because he's not the evaluator. Well, he thought it should have been at some step before him. Correct. Okay. And so she skipped somebody. Correct. Yes, Your Honor. So, again, our point here on the due process issue is that the right to reinstatement, the right to, as plaintiffs have argued at various times, complete a remediation plan under the school code, the right to be recalled following a layoff, those are all rights that on the evaluation, which under the school code is committed to the discretion of the evaluators. It does have to be conducted in accordance with the school code, but there is no contention in this case that the district violated any of the evaluation procedures, and there's no contention in this case that the district violated anything in the school code in the way in which it proceeded with the layoff. In fact, it's conceded that the I have a brief amount of time left. I'd like to touch briefly on the plaintiff's First Amendment argument, and there's a detailed factual record before the court. I won't attempt to summarize it in the course of three minutes. I do want to point out the scope of plaintiff's arguments here. This is a situation in which the plaintiff served as the co-president of her local union council from 2010 until the end of her employment in 2017. Over the time, the record is clear and undisputed that the relationships between the district and the union were generally quite harmonious. Are you conceding that there is a First Amendment right here at all? We are. There's a First Amendment right to represent a union in collective bargaining? For summary judgment purposes, we did not argue. That's not a question of summary judgment purposes. That's a question of law. Are you conceding that? There is. Our understanding, Your Honor, is that there would be a right to engage in certain activities on behalf of the union, so it is not a point that we agree on. There is certainly a statutory right. No one in this case seems aware that the Supreme Court has held in Knight and Perry education that there is no constitutional right involved. First Amendment claims were made in those cases on behalf of somebody who wanted to pursue grievances on behalf of the union, and the Supreme Court said the First Amendment has nothing to say about this. It's entirely statutory, and no one has discussed those cases in this litigation. Fair enough, Your Honor. I will take your point. So my point is, Your Honors, the record makes abundantly clear that the relationships between the union and the administration in this case were overall excellent over the course of Ms. Mascow's entire tenure with the union. The plaintiffs want the court to believe that a plaintiff has carried her burden of establishing that the two minor disputes in 2015 and 2014 over whether or not these two after-school events were going to occur caused Superintendent Katzen and Principal LaFleur to engage in a multi-year campaign of retaliation to oust Ms. Mascow as the union president. The law is clear that there is a relatively heavy burden here at the summary judgment stage for plaintiffs to present a prima facie case of retaliation. The plaintiffs have not carried that burden. The district court correctly found that there is no evidence from which the reasonable finder of fact could conclude that the two isolated incidents at that time contributed causally to her dismissal. And with that, I see my time is up. So if the court has no further questions, we'd ask the court to affirm the judgment of the district court. Thank you. Thank you, Mr. McCorny. Anything further, Mr. Jokic? Just a couple of things, Your Honor. First, with respect to the factual issue in terms of what happened with respect to the evaluation, if you take a look at Ms. Mascow's declaration, which is contained in the appendix in this case, and it's at appendix 55 and 56, her declaration indicates that she received the unsatisfactory evaluation on February 21, 2017, and that on February 22, she met with Katzen and that, quote, I asked him whether the district would So that's a pretty authoritative rejection of changes by that. What Mr. McCorny said is roughly, if you ask the wrong person, you get an irrelevant answer. She was supposed to consult with the principal. She decided to bypass the chain of command, and well, there you are. The principal didn't say go and talk, or the superintendent didn't say go and talk to the principal. That's the right chain of command. In his deposition, the superintendent admitted that other evaluations have been changed in the past, and quite honestly, and this wasn't raised in the district court, so there was no evidence in the record about what the evaluation meeting was like with principal before, but it only gets unreasonable for somebody who's been given an unsatisfactory, who's received superlative evaluations for years and years and years to approach the superintendent in a small district and ask, and I think the superintendent's word is word that makes a difference in such a situation. The other point I'd like to address is the point raised by Judge Easterbrook about whether there's a First Amendment interest in this case at all, and in our brief on page 29, we refer to the Janus case, which basically holds that associational activity by a union is inherently political, and that is why you cannot- I don't think they purported to overrule Knight and Perry education. I don't think they purported to overrule Knight, but I think Knight's a different case. I think it's clear that you don't have a right- It would have been nice if the parties had engaged on that question. Too bad they didn't. Well, Your Honor, I'm a respondent in the lower court. I can only respond to the points that are raised in the motion to dismiss and in the summary judgment motion. You represent the plaintiff. I do, but I'm both on a motion to dismiss- You can make any legal arguments you want, and if you make a claim under the First Amendment, one of the things you have to do is point out that this is actually protected speech. That is affected by Knight and Perry education, but no one brought it to the attention of the district judge. Your Honor, what Knight says is that you don't have a right- What the cases say is that you don't have a right to have a union be a bargaining representative. They don't say that you don't have a right to speak on matters that have to do with your- has relied on them, and your adversary has done you the great favor of conceding in your favor something that they might well have denied. Don't look a gift horse in the mouth. Thank you, Your Honor. I appreciate both the legal and the practical advice on that. The case is taken under advisement.